IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DEVON LOUJOSEPH ALSTON, *Appellant*.

No. 1 CA-CR 23-0511

FILED 10-20-2025

Appeal from the Superior Court in Maricopa County
No. CR2021-110684-001
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice M. Jones
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

## OPINION

Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge Daniel J. Kiley and Judge D. Steven Williams joined.

B R O W N, Judge:

¶1        Devon Alston appeals his convictions and sentences for first-degree murder and drive-by shooting.  He argues the trial court improperly admitted several out-of-court statements from witnesses and wrongly considered aggravating factors the State had not proven at sentencing.  Because Alston has not shown reversible error, we affirm.

## BACKGROUND

¶2        We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all reasonable inferences against Alston.  *State v. Fierro*, 254 Ariz. 35, 38, ¶ 2 (2022).  Late one evening in March 2021, a venue located in a strip mall hosted a party.  The venue hired security guards, including Warren and Hunter, to ensure no weapons or alcohol were brought into the party and to prevent people from loitering outside.[1]  As the evening progressed, Warren overheard Alston—who appeared to be wearing a pink beanie—say that he had a "banger," meaning a firearm.  Warren relayed that statement to the other security guards, including Hunter.  Both Warren and Hunter watched Alston as he walked around the parking lot and talked with others.

¶3        As the party was winding down and people began to leave, Alston and several others ran to a red sedan in a parking lot near the venue.  Alston got into the driver's seat, drove the car out of the parking lot, and then continued down the street with the driver's side of the car facing the venue.  Several shots were fired from the car toward the venue.  Both Warren and Hunter noted the driver's side window was down, and they each saw muzzle flashes from a firearm coming from that window.  One of the bullets struck a partygoer, who died at the scene from the gunshot.

---

[1]        We use pseudonyms to protect the identities of the victims, including the security guards and event organizer.

¶4 Law enforcement interviewed the security guards, as well as Samuel (the event organizer), who explained the "pink beanie" was actually a pink ski mask that had been rolled up and resembled a beanie. Officers found 9-millimeter and .40 caliber bullet casings on the street in front of the venue. After speaking to a member of the victim's family the next morning, police suspected that Alston may have been involved in the shooting. Officers located Alston in an apartment complex and followed him. They noticed he was wearing a black hooded sweatshirt and carrying a black backpack when he got into a red car and drove away, eventually stopping in a neighborhood and entering a house. After receiving permission from the renter of the house to search for Alston, the officers found him there; he was wearing a maroon sweatshirt and did not have a backpack.

¶5 Police searched the house, finding a black sweatshirt as well as a backpack resembling what Alston had been carrying earlier. Inside the backpack was a .40 caliber handgun and a 9-millimeter rifle. Officers also found a smaller fanny pack containing both .40 caliber and 9-millimeter ammunition. Subsequent testing determined that the bullet casings recovered at the scene had been fired from the firearms found in the backpack. Officers also searched Alston's apartment, where they found a pink ski mask on top of a refrigerator. During a photo lineup, security guards Hunter and Warren identified Alston as the person in the driver's seat of the car from which the gunshots were fired.

¶6 A grand jury indicted Alston for first-degree murder, drive-by shooting, and misconduct involving weapons. The court severed trial of the misconduct count. After a seven-day trial on the remaining counts, at which the security guards and Samuel testified, a jury convicted Alston as charged. During the aggravation phase, the State alleged the offenses were (1) dangerous; (2) involved the use of a deadly weapon; and (3) caused physical, emotional, or financial harm to the victims or their families. The jury found the State proved the first two factors as to both convictions. The jury further found the State did not prove emotional or financial harm to the victim's family as to Alston's murder conviction and could not reach a unanimous decision for the same aggravator as to the drive-by shooting conviction.[2]

---

[2] As stated in A.R.S. § 13-701(D)(9), this factor applies when "[t]he victim . . . suffered physical, emotional or financial harm." For the drive-by shooting conviction, because the State's argument during the

**¶7**          At sentencing, the trial court acknowledged the two aggravating factors found by the jury and that Alston had a prior conviction for facilitation to commit aggravated robbery, a class six non-dangerous felony.  Despite the jury's determination that the State did not prove the victim's family suffered emotional harm, the court relied on that factor at sentencing.  The court then sentenced Alston to natural life in prison for the murder conviction, and a slightly aggravated term of 12 years' imprisonment for the drive-by shooting conviction.    Alston timely appealed.  We have jurisdiction under A.R.S. §§ 13-4031, -4033.

## DISCUSSION

### A.    Prior Consistent Statements

**¶8**          Alston argues the trial court erred by admitting several hearsay statements and audio recordings as prior consistent statements under Arizona Rule of Evidence ("Rule") 801(d)(1)(B).  Though we review evidentiary rulings for an abuse of discretion, *State v. Fish*, 222 Ariz. 109, 114, ¶ 8 (App. 2009), we review the interpretation of rules de novo, *State v. Winegardner*, 243 Ariz. 482, 484, ¶ 5 (2018).

#### 1.    Hunter's Statements

**¶9**          Alston first challenges the admission of statements Hunter made to a police officer shortly after the shooting.  At trial, an officer who responded to the crime scene testified about an interview he conducted with Hunter, and specifically, whether Hunter had indicated "that he paid closer attention" to Alston because "he had made some mention of having a gun."   The court allowed the officer to answer questions about the interview over Alston's hearsay objection after the State asserted that it was admissible as a prior consistent statement under Rule 801(d)(1)(B) because Hunter's credibility had been attacked on cross-examination.

**¶10**          Generally, an out-of-court statement offered for the truth of the matter asserted is hearsay and not admissible as evidence.  Ariz. R. Evid. 801(c), 802.  But a declarant's prior statements that are consistent with that declarant's testimony are not hearsay if the declarant testifies at trial, is subject to cross-examination about the statements, and as pertinent here, the statements are offered either (1) "to rebut an express or implied charge that the declarant recently fabricated" the testimony, or (2) "to rehabilitate the declarant's credibility as a witness when attacked on another ground."

_____

aggravation phase relied only on the emotional harm Alston's conduct had on Hunter, we reference only that type of harm in our analysis.

Ariz. R. Evid. 801(d)(1)(B)(i),(ii). Amended in 2015, the current rule is intended "to extend substantive effect to consistent statements that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory." *See* Ariz. R. Evid. 801 cmt. 2015 Amendment to Rule 801(d)(1)(B). The text of Rule 801(d)(1)(B) mirrors the text of the analogous federal rule of evidence. *See* Fed. R. Evid. 801(d)(1)(B).

¶11         Alston argues he never expressly or impliedly accused Hunter or any other witness of fabricating their testimony, making Rule 801(d)(1)(B)(i) inapplicable. He also contends that Rule 801(d)(1)(B)(ii) does not protect the statements because his trial strategy focused on misidentification rather than witness credibility.

¶12         Contrary to Alston's position, nothing in Rule 801(d)(1)(B)(ii) limits or qualifies the use of prior consistent statements based on how a party attacks witness credibility, or how important attacking that witness's credibility is to the party's case. *See Winegardner*, 243 Ariz. at 484, ¶ 5 ("[I]f a rule's language is subject to only one reasonable meaning, we apply that meaning."). Instead, subpart (ii) explicitly allows the use of a prior consistent statement to rehabilitate the declarant's credibility as a witness if it has been attacked on "another ground," meaning a different ground than fabrication of testimony. Ariz. R. Evid. 801(d)(1)(B)(ii). Thus, under this rule, once a party attacks a witness's credibility, that witness's prior consistent statements offered to rehabilitate their testimony become substantively admissible.

¶13         Arizona courts have not addressed the issue of the scope or significance of a credibility attack required to trigger the rule's protection for such statements, but federal courts have held that even brief attacks on credibility may allow the admission of prior consistent statements. *See United States v. Flores*, 945 F.3d 687, 705 (2d Cir. 2019) (noting that prior consistent statements were admissible under the Federal Rule of Evidence 801(d)(1)(B)(ii) even though the defendant's challenges to the witness-declarant's memory during opening statements were "brief" and "not their main challenges"); *see also United States v. Cox*, 871 F.3d 479, 487 (6th Cir. 2017) (finding admission of prior consistent statements proper when defendant attacked witness's memory); *see also Winegardner*, 243 Ariz. at 485, ¶ 8 ("Although the federal courts' interpretation of the Federal Rules of Evidence does not control our interpretation of our own evidentiary rules, federal precedent is particularly persuasive given that we have expressly sought to conform our rules to the federal rules.").

¶14        Alston impeached Hunter with prior statements Hunter made to officers about the number of people in the parking lot outside the party, as well as Hunter having seen other partygoers wearing pink beanies.  Although the questioning was brief, it was nonetheless an attack on Hunter's credibility.  Even if Alston did not focus on Hunter's credibility at trial, the trial court could have reasonably determined that Alston had attacked Hunter's credibility, and Hunter's prior statements to the officer were admissible to rebut that attack.  *See United States v. Purcell*, 967 F.3d 159, 196 (2d Cir. 2020) (noting that Federal Rule of Evidence 801(d)(1)(B)(ii) was amended in 2014 to allow substantive admission of prior consistent statements to "explain what otherwise appears to be an inconsistency in the witness's testimony or to rebut a charge of faulty memory" (internal quotations and citations omitted)).  Alston has not shown the court abused its discretion by admitting Hunter's prior consistent statements.

## 2.        Warren's Statements

¶15        The State also introduced statements at trial Warren made to police.  The State asked to play for the jury a portion of a recorded interview of Warren under Rule 801(d)(1)(B), which the court allowed without objection by Alston.  In the clip, Warren explained that (1) the person he identified as the shooter was wearing a pink beanie, dark jeans, and a colorful shirt; (2) he heard the person talk about having a weapon; and (3) a group, including the person, ran south from the event toward a red sedan.  Because Alston did not object to the introduction of these statements or the recording, we review for fundamental error only.  *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

¶16        Under that standard of review, Alston must show that admission of the statements was error, that the error was fundamental, and the error caused him prejudice.  *Id.*  An error is fundamental when it either (1) goes to the foundation of his case, (2) deprives him of a right essential to his defense, or (3) is so egregious that he could not have received a fair trial.  *Id.* at 142, ¶ 21.  If the error is fundamental under the first two prongs Alston must demonstrate prejudice, but not under the third.  *Id.*

¶17        Whether Alston sufficiently attacked Warren's credibility to render his prior consistent statements admissible as non-hearsay under Rule 801(d)(1)(B)(ii) is unclear.  Regardless, Alston has not carried his burden to demonstrate prejudice, which required him to show that if the State had not introduced the prior consistent statements, "a reasonable jury could have reached a different verdict."  *Id.*  at 144, ¶ 29 (citation modified).

This "could have" standard is not easily met and is an objective inquiry that cannot rely on imaginative guesswork. *Id.* at ¶ 31.

¶18 Alston argues he does not have to show prejudice because admitting the challenged statements was "so egregious that [he] could not possibly have received a fair trial," obviating any need to show prejudice. *Escalante*, 245 Ariz. at 141, ¶ 20. According to Alston, the hearsay statements constituted a "parade of corroborating witnesses," which created the egregious error. But Alston fails to recognize that fundamental error under this prong is a very demanding standard, *State v. Romero*, 258 Ariz. 237, 255, ¶ 65 (App. 2024), and the error in question must "so profoundly distort the trial that injustice is obvious without the need to further consider prejudice," *Escalante*, 245 Ariz. at 141, ¶ 20. Even assuming Alston is correct that some of these statements should not have been admitted at trial, much of their content was established through testimony of the same declarant, or the testimony of other witnesses. *Infra* ¶ 19. The claimed errors are not "so egregious" that Alston "could not possibly have received a fair trial." *Escalante*, 245 Ariz. at 141, ¶ 20.

¶19 Moreover, the information conveyed through the recorded interview and the officer's testimony largely reflects the same information Warren provided on direct examination. Warren testified that the night of the shooting, he recalled seeing an individual in dark clothing wearing a pink beanie, who had mentioned having a "banger" (meaning a firearm). Warren also noted this person's race, height, and build. He also saw this individual leave the event with a group of people who then got into a red sedan. Hunter likewise testified to many of the same facts reflected in the recording. Warren's prior consistent statements offered evidence the jury would have heard from other witnesses or his own properly admitted testimony presented at trial. *See State v. Wood*, 180 Ariz. 53, 65 (1994) (finding that impermissible hearsay evidence did not prejudice the defendant because "other witnesses presented direct testimony on the same issue"). Nothing in this record convinces us that a reasonable jury could have reached a different conclusion had Warren's prior statements been precluded, and thus Alston has not shown prejudice. *Cf. State v. McGann*, 132 Ariz. 296, 299 (1982) (noting that admission of unobjected to hearsay testimony warrants reversal when it is "the sole proof of an essential element of the state's case").

### 3. Samuel's Statements

¶20 Alston also argues the trial court abused its discretion by allowing the State (1) to question the same officer who had interviewed

Hunter about statements Samuel made to law enforcement after the shooting, and (2) to further play a recorded portion of the interview. In the recorded interview, Samuel described seeing the shooter wearing a pink beanie and running towards a car. Samuel also said he saw this same individual driving by the party, with his window rolled down, and the individual was "shooting in the air." The officer testified that Samuel indicated he saw the shooter wearing a pink beanie and dark clothing, and that this individual ran to a vehicle. Alston objected to playing the recorded interview for the jury and thus we review its admission for harmless error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). An error is harmless if the State demonstrates "beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Id.*

**¶21**  Given that the record does not reveal any attack on Samuel's credibility as a witness such that his statements would be admissible under Rule 801(d)(1)(B), admission of these statements was error. However, Samuel's prior statements to the officer, as evidenced both in the recording and through the officer's testimony, reflected the same facts established through Samuel's own testimony and the testimony of the security guards. Evidence that "supports a fact otherwise established by existing evidence" is cumulative, *State v. Copeland*, 253 Ariz. 104, 116, ¶ 27 (App. 2022) (citations omitted), and the erroneous admission of cumulative evidence is harmless, *State v. Williams*, 133 Ariz. 220, 226 (1982). *See State v. Hoskins*, 199 Ariz. 127, 144, ¶ 66 (2000) (finding error was harmless because "all aspects of [the witness's] prior statements were included in [his] own testimony" and the witness was subject to cross-examination).

**¶22**  Citing *State v. Martin,* 135 Ariz. 552 (1983), Alston contends that concluding the hearsay statements did not affect the verdict is impossible. But the circumstances in *Martin* are materially different from the present case. *Martin* involved a defendant accused of child molestation, where the State introduced several witnesses with whom the victim had discussed her allegations. *Id.* at 553. Those witnesses testified about what the victim had told them. Our supreme court analyzed the statements under Rule 801(d)(1)(B)(i) and held admission of these statements was erroneous because the superior court "made no determination as to when the motive to fabricate began." *Id.* at 555. The court further concluded it could not say this "parade of corroborating witnesses" did not influence the jury's verdict beyond a reasonable doubt. *Id.*

**¶23**  Samuel's testimony at trial and the content of his prior statements reflect facts that both Warren and Hunter largely established in their properly admitted testimony. Alston's case does not present a

situation where a "parade of corroborating witnesses" bolstered the credibility of the State's key witness, *see Martin*, 135 Ariz. at 555, given that Samuel was one of several witnesses attesting to essentially the same set of facts. And though admission of corroborating hearsay statements may be prejudicial when credibility is "'the central issue' because of scant physical evidence or a dearth of corroborating eyewitnesses," *Copeland*, 253 Ariz. at 116, ¶ 29, Alston has plainly asserted in his appellate briefing that his trial strategy did not turn on witness credibility. The State has met its burden of showing that admitting Samuel's prior consistent statements was harmless. *See State v. McVay*, 127 Ariz. 450, 453 (1980) (using prior consistent statements to bolster a witness's credibility may be prejudicial when that witness's testimony is the only evidence for elements of an offense, or when the credibility of that witness may be "the factor which removed a reasonable doubt in the minds of the jurors").

**B.     Aggravating Factors at Sentencing**

**¶24**         Alston argues the trial court improperly considered several aggravating factors at sentencing. Because Alston did not object at sentencing, we review for fundamental, prejudicial error. *Escalante*, 245 Ariz. at 140, ¶ 12. To justify re-sentencing, Alston must demonstrate that absent the error the court could have reasonably imposed a lighter sentence. *State v. Trujillo*, 227 Ariz. 314, 318, ¶ 16 (App. 2011).

**¶25**         At sentencing, the court considered four aggravating factors: the dangerousness of the offense, the use of a deadly weapon, Alston's prior felony conviction, and the emotional harm to the victim, or the victim's family. The State concedes the court should not have considered the first two factors. The "dangerousness" of the offense is not an aggravating factor a court could properly use to impose an aggravated sentence under A.R.S. § 13-701(D). The use of a deadly weapon was an essential element of the drive-by shooting offense, and by extension felony murder, which meant it could not serve to aggravate the sentence for the convictions. *See* A.R.S. § 13-701(D)(2). But Alston does not contest he had a prior conviction, nor does he assert the court erred in considering the conviction. *See* A.R.S. § 13-701(D)(11). Thus, only the emotional harm factor is at issue here. Alston argues the court's reliance on that factor was improper because the jury found the State did not prove it as to his murder conviction and could not reach a verdict on that factor for his drive-by shooting conviction. We analyze the court's consideration of the emotional harm factor as it pertains to each of Alston's convictions.

### 1. First-Degree Murder Sentence

¶26 When a defendant is convicted of first-degree murder based on felony murder, *see* A.R.S. § 13-1105(A)(2), and the State has not noticed an intent to seek the death penalty, "the court shall determine whether to impose a sentence of life or natural life," A.R.S. § 13-752(A). "A defendant who is sentenced to natural life is not eligible for commutation, parole, work furlough, work release or release from confinement on any basis," whereas a defendant sentenced to life "shall not be released on any basis" until that defendant serves a set term, the length of which turns on the age of the victim. A.R.S. § 13-751(A)(2).

¶27 Section 13-752(Q) sets forth the applicable factors for determining whether to impose life or natural life. The statute says the trial court "[s]hall consider the aggravating and mitigating circumstances listed in section 13-701 and *any* statement made by a victim" and "[m]ay consider *any* evidence introduced before sentencing or at any other sentencing proceeding." *Id.* (emphasis added). Nothing in the statute suggests the court or a jury must find an aggravating factor to sentence a defendant to natural life, as opposed to a life sentence; nor does the Constitution require such a finding. *See State v. Fell*, 210 Ariz. 554, 560, ¶ 19 (2005) (concluding that "the Sixth Amendment does not require that a jury find an aggravating circumstance before a natural life sentence can be imposed").

¶28 Alston has not shown the court erred by considering the emotional harm to the victim's family in determining the appropriate sentence for his murder conviction, regardless of the jury's verdict during the aggravation phase of trial. At the sentencing hearing, several of the victim's family members spoke and discussed the effect the murder had on their lives. Additionally, the presentence report included numerous letters from the victim's family and friends describing how the loss of the victim affected them. At the least, the court had discretion under A.R.S. § 13-751(Q)(2) to consider evidence of emotional harm to the victim's family, notwithstanding the jury's aggravation verdict, in determining what sentence was appropriate for the murder conviction.

### 2. Drive-by Shooting Conviction

¶29 We next address whether the trial court erred by considering emotional harm to the victim as it relates to Alston's conviction for drive-by shooting. Alston was convicted of violating A.R.S. § 13-1209, which makes "intentionally discharging a weapon from a motor vehicle at a person . . . or an occupied structure" a class two felony. A.R.S.

§ 13-1209(A), (D). Because Alston committed a dangerous offense, he was subject to sentencing under A.R.S. § 13-704. Section 13-704(A) establishes the applicable sentencing range for a class two dangerous felony offense: the minimum sentence is 7 years, the presumptive is 10.5 years, and the maximum is 21 years. To aggravate a sentence beyond the presumptive term, the court needed to rely on at least one aggravating factor found by the trier of fact. A.R.S. §§ 13-701(C), (D), -704(H). Aggravating factors must be found beyond a reasonable doubt by the trier of fact, except for the prior felony conviction factor under A.R.S. § 13-701(D)(11), which may be found by the court. A.R.S. § 13-701(C).

¶30　　　　Once an appropriate aggravating factor has been found beyond a reasonable doubt, the trial court may then "find and consider additional factors relevant to the imposition of a sentence up to the maximum." *State v. Martinez*, 210 Ariz. 578, 585, ¶ 26 (2005). In determining what sentence to impose within a permissible sentencing range, the court may find any additional aggravating factors relevant to the court's exercise of such discretion by a preponderance of the evidence. *Id.*

¶31　　　　The trial court imposed a 12-year sentence for the drive-by shooting conviction. Because this exceeds the 10.5-year presumptive sentence, there needed to be at least one aggravating factor under A.R.S. § 13-701. The court found, and Alston does not contest, that he had a prior felony conviction within the past 10 years under A.R.S. § 13-701(D)(11). So regardless of the emotional harm factor, the court was authorized to impose an aggravated sentence for Alston's conviction for drive-by shooting up to the maximum term based on his prior conviction; any additional factors the court relied upon were merely relevant to the court's exercise of discretion as to what specific sentence it would impose. *See State v. Price*, 217 Ariz. 182, 185, ¶ 15 (2007) (explaining that if a prior conviction is found by the court or the jury, "the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute"); *see also* A.R.S. § 13-701(G) (requiring a sentencing court to "consider the evidence and opinions presented by the victim or the victim's immediate family at any aggravation or mitigation proceeding or in the presentence report").

¶32　　　　Under these circumstances, the court did not err by considering the emotional harm factor in sentencing Alston to an aggravated term of imprisonment. As noted, the jury could not reach a unanimous decision on this factor during the aggravation phase at trial. However, as the court instructed, the jury had to determine whether the State proved emotional harm to the victim *beyond a reasonable doubt*. At

sentencing, the trial court found that Alston had a prior conviction under A.R.S. § 13-701(D)(11), and thus proof of the emotional harm factor was no longer governed by the same standard. Instead, the burden of proof required at sentencing was preponderance of the evidence. *Martinez*, 210 Ariz. at 585, ¶ 26. Because the jury evaluated the emotional harm factor for a different purpose and under a higher burden of proof than the court when it considered the same factor at sentencing, the court did not err in relying on that factor at sentencing.

**¶33** Even assuming the court should not have considered the emotional harm to the victim or victim's family, Alston has not shown that any error was fundamental to his sentence for either conviction. It is true that an illegal sentence constitutes fundamental error. *See State v. Pesqueria*, 235 Ariz. 470, 478, ¶ 29 (App. 2014). But Alston's sentences are not illegal. Because the prior conviction served as a legally proper aggravating factor to support an aggravated sentence for drive-by shooting, and because the court did not need any such factor to sentence Alston to natural life for his murder conviction, Alston's sentences were within the court's discretion to impose. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 12 (App. 2006) (concluding that the erroneous consideration of an aggravating factor was not fundamental error in part because the defendant did not receive an illegal sentence and the sentences were within the statutory range prescribed for the offense).

**¶34** Nor are we persuaded by Alston's reliance on *Trujillo*, 227 Ariz. at 314, ¶ 15, in asserting that consideration of an "improper factor" warrants resentencing in this case. In *Trujillo*, the trial court specifically relied on the defendant's lack of remorse during sentencing in imposing an aggravated sentence. *Id.* at 316, ¶ 6. This court held that such consideration improperly infringed on the defendant's Fifth Amendment right against self-incrimination. *Id.* at 318, ¶ 15. Alston has not identified how consideration of the emotional harm to the victim or victim's family, or the other factors the State concedes as error (the dangerousness of the offense and the use of a deadly weapon), similarly deprived him of any constitutional protection. He has therefore failed to meet his burden of demonstrating that any sentencing error was fundamental.

## CONCLUSION

¶35        We affirm Alston's convictions and sentences.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR