# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2024

Lyle W. Cayce
Clerk

—————————

No. 22-50697

—————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MARCO ANTONIO ABUNDIZ,

*Defendant—Appellant*.

—————————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CR-2409-1

—————————————————————————

Before HIGGINBOTHAM, HIGGINSON, and DUNCAN, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

Convicted under 18 U.S.C. § 2241(c) and sentenced to life imprisonment for sexually abusing his six-year-old niece, K.Z., Marco Antonio Abundiz argues the district court erred by: (1) denying his right to confrontation by allowing K.Z. to testify via CCTV; (2) failing to make the findings required under 18 U.S.C § 3509 before allowing K.Z. to testify via CCTV; (3) admitting evidence of a previous sexual assault; (4) admitting evidence that he possessed child pornography; and (5) instructing the jury regarding evidence admitted under Federal Rules of Evidence 413 and 414. We AFFIRM.

No. 22-50697

# I.

In 2020, six-year-old K.Z. told her mother, Adriana Zapata, that Abundiz (K.Z.'s uncle and Adriana's brother) had been sexually abusing her while babysitting her in their home on the Fort Bliss Army Base in El Paso, Texas. According to testimony at trial, K.Z. reported to her parents and multiple medical professionals that on multiple occasions, Abundiz would sexually molest her.

Further investigation revealed that Abundiz previously sexually abused his minor cousin, who testified that Abundiz had sex with her numerous times over an eight-year time span before she was sixteen.[1] Abundiz was charged with one count of aggravated sexual abuse of a minor under the age of 12 years in violation of 18 U.S.C. § 2241(c).

## A. K.Z. Testimony

### 1. CCTV

Before trial, the Government moved to allow K.Z. to testify via CCTV outside the personal presence of Abundiz and the jury, in accordance with 18 U.S.C. § 3509, the federal statute defining child victims' rights when they are required to testify at trial.[2] At a March 28, 2022 hearing on the motion, the Government called Dr. Lubit, an expert in forensic, child, and adolescent

---

[1] Abundiz was never prosecuted for this conduct.

[2] Prior to the hearing, the district court also issued a written order explaining the law under 18 U.S.C. § 3509 and establishing the relevant standards for the hearing. Abundiz notes that the Government's initial request for CCTV testimony had a "fatal failure" in that it did not request a hearing despite the fact that "every single circuit court that considered this issue [child victims testifying under 18 U.S.C. § 3509] required that a hearing be held." The Fifth Circuit has not addressed whether hearings are necessary and need not reach this issue because the district court cured any error by holding a hearing.

2

psychiatry.[3] Lubit began by providing general testimony about child victims who testify in the presence of their abusers. He testified that, in his opinion and based on scientific literature, child victims who must "be confronted by or see" their abusers are "re-traumatize[d]" by the experience as it can be an "immense traumatic trigger causing a great deal of fear, anxiety, and distress." Lubit further explained that forcing a child victim to be in the same space as her abuser causes "betrayal trauma," which may make the child distrust society, the police, and the legal system, "damag[ing] [their] ability to trust adults in general."

Turning to K.Z., Lubit testified that he spoke with her three times but that K.Z. was hesitant to discuss the assault on all three occasions because "it was too painful." Lubit opined it was "too anxiety provoking" for her. Lubit further testified that K.Z. was scared of Abundiz and had substantial anxiety about seeing him and speaking about the assault. He explained that "[s]he reports very clearly she is frightened of [Abundiz]." If K.Z. were forced to speak about the assault in Abundiz's presence, Lubit opined that K.Z. would be "so flooded with anxiety, that she wouldn't be able to" testify. He also stated that having to testify in front of Abundiz would "re-traumatize" K.Z., "deepen the trauma she has," and cause more than de minimis "betrayal trauma." Moreover, Lubit suggested that being in the same room as Abundiz would, "to a reasonable degree of medical certainty . . . prevent [K.Z.] from being able to testify" and that having an adult attendant in the courtroom would not resolve this issue. Finally, Lubit testified K.Z. faced a higher risk of trauma if she were required to testify in the presence of Abundiz rather than permitted to testify via CCTV.

_____

[3] At no time did Abundiz object to Lubit's qualifications as an expert.

No. 22-50697

According to Lubit, this risk of trauma was more than mere nervousness or reluctance.

Following this testimony, the district court granted the Government's request to allow K.Z. to testify via CCTV:

> I find that the tender age of the child dictates that she be allowed to testify via closed-circuit TV. The combination of the time elapsed since the incident and the facts and circumstances leading to the incident and what has transpired since the incident, again, dictates that this testimony happen -- her testimony take place in the less stressful set of circumstances that can be fashioned to do so. I find that to avoid the appearance for any -- to avoid any misapprehensions, misperceptions, or any presumption of guilt or of risk to the child, only the child should be on camera when she is testifying.

The court specified procedures for K.Z.'s CCTV testimony and requested to meet with K.Z., her guardians, and counsel in chambers to explain the process and instill upon K.Z. the need to testify truthfully. Then, the following exchange occurred:

> AUSA: Is your Honor finding under Section 3509(b)(1)(B)(ii) that there is a substantial likelihood established by expert testimony that the child would suffer emotional trauma from testifying?
>
> Court: Yes.

**2. K.Z. Testimony**

Pursuant to the district court's order, K.Z. testified via CCTV. K.Z., who was seven-years-old and in second grade at the time of trial, testified that she remembered living in Texas and that Abundiz babysat her. When asked what Abundiz did to her, K.Z. said "he always does something bad to me," he "always see[s] my private part [sic]," and he "licks" her private parts.

4

No. 22-50697

She said this occurred "more than one time" while Abundiz was "sitting on his bed" and she was "laying down."[4]

## B. Maria Feliz Ramirez & Rosalva Hernandez Testimony

The Government also offered the testimony of Maria Feliz Ramirez, Abundiz's sister, and Rosalva Hernandez, Abundiz's stepsister.

Maria explained that she lived with Abundiz until she was fourteen and recalled a moment when Abundiz told her he was dating their stepsister, Rosalva, who would have been no more than 11 years old at the time. Maria recalled Abundiz asking her to remember when she walked in on him and Rosalva having sex:

> So he told me that they were dating. And I was 16, so I didn't even know how to react. I was just like, Oh, that's cool. And then he was like, Oh, you walked in on us one time. And I was like, Oh, no, I didn't. He was all, like, Yeah, you came into my room to, like, clean. And I put the blanket over me really quick.

Rosalva also testified and confirmed these allegations. She said that she lived with Abundiz as a child and that she had sex with him from when she was eight until she was sixteen, numerous times "on a weekly basis."

---

[4] K.Z. made similar reports to medical professionals who testified at trial. Alena Cummings, an EMT who responded to the scene, testified to K.Z.'s statements on the day of the arrest. On that day, Cummings spoke privately with K.Z. and later testified that K.Z. shared "that her uncle told her to go up to the room. . . . and then he kissed her on her lips and touched her in her genital area," which K.Z. called her "pee-pee" while "point[ing] to her vagina." Although K.Z. could not identify the day this happened, Cummings understood that the assault occurred in the house. Leticia Sprinkle, the registered nurse who examined K.Z. the day she was brought to the hospital, also testified that K.Z. made similar statements during the examination. Furthermore, K.Z. indicated to Sprinkle that Abundiz kissed her genitalia and mouth with his lips and tongue, but not her breasts. K.Z. denied penetration and other sexual acts, but she said "it was wet" when she was asked how she knew Abundiz used his tongue. Based on her examination, Sprinkle believed that the assault happened a few days prior.

No. 22-50697

In response to the Government's motion in limine and over Abundiz's objections, the district court admitted this evidence under Federal Rule of Evidence 413 ("FRE 413"). First, the district court determined that FRE 413 authorized this testimony as evidence of "any other" prior sexual assault admissible under the rule. Under FRE 413, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault."[5] "Sexual assault" includes a crime under federal or state law involving "any conduct prohibited by 18 U.S.C. chapter 109A."[6] Because Abundiz was charged under 18 U.S.C. § 2241(c), which falls within 18 U.S.C. chapter 109A, the court concluded that Rosalva and Maria's testimony fell squarely within the Rule's ambit.

The district court further explained that "[c]onduct admissible under Rule 413 need not have been conduct for which Defendant was convicted or even charged" and that "[a]ll that is required by the rule is the evidence be relevant." The court then found the testimony was relevant because "[i]t is certainly relevant if, in a trial for aggravated sexual abuse, the defendant has a history of allegations of sexual assault." Lastly, the court found that "the probative value of this testimony . . . is not substantially outweighed by the concerns in Rule 403," noting that FRE 413 "is a rule of inclusion and presumes the admissibility of evidence that falls under the rule."[7]

---

[5] Fed. R. Evid. 413(a).

[6] Fed. R. Evid. 413(d)(1).

[7] As discussed, *infra* Section III.A.1, the district court excluded a third alleged assault between Maria and Abundiz under Federal Rule of Evidence 403 as "needlessly cumulative."

No. 22-50697

### C. Kathleen Fronczak Testimony

Kathleen Fronczak, an FBI task force officer, appeared on behalf of the Government and testified that the FBI flagged Abundiz one year earlier after his name matched the physical mailing address associated with an IP address that had shared child pornography files. After K.Z.'s mother reported the assault, Fronczak interviewed Abundiz at a hospital, where he was staying due to a COVID-19 exposure. Abundiz waived his *Miranda* rights and told Fronczak that K.Z. told her mother he "kissed her upstairs in his bedroom." Abundiz "explained that he didn't know why she had said something like that, that he thought maybe she was mad at him . . . because she had been punished earlier in the day for misbehaving, and he had laughed at her." Abundiz also "couldn't advise how she would get an idea to say something like this or would even know to say something like this."

Abundiz also admitted to Fronczak that he had previously downloaded child pornography using the UTorrent network, which was the same software used by the IP address that shared child pornography in 2019. Specifically, Abundiz recalled downloading a large file with a bunch of smaller files in it and explained that he would search for material using the terms "CP" (child pornography) and "PTHC" (pre-teen hard core). He also said he downloaded content such as "*The Anarchist Cookbook*," "anime," and "videos of animals and children being killed" and that he believed he would one day be caught and go to jail because of the child pornography.

Under Federal Rule of Evidence 414, the district court admitted Fronczak's testimony regarding the FBI's child pornography investigation as well as her statements that Abundiz admitted to accessing child

pornography.[8] Rule 414 permits courts "[i]n a criminal case in which a defendant is accused of child molestation" to "admit evidence that the defendant committed any other child molestation" for "any matter to which it is relevant."[9] The court explained that FRE 414 "presumes the admissibility of evidence that falls under the rule" and "makes clear that a defendant's alleged possession of child pornography is relevant to a case involving an accusation of child molestation." The court admitted Fronczak's testimony after finding that the probative value of testimony regarding Defendant's possession of child pornography was not "substantially outweighed by undue prejudice or any of the other concerns in Rule 403."

### D. Jury Instructions

This Circuit has yet to adopt a FRE 413 and FRE 414 pattern jury instruction. As a result, the district court crafted its own, declining to adopt the exact instructions used by the Ninth or Eighth Circuits that the Government suggested, modeling its instructions on those of the Eighth Circuit.[10]

---

[8] *See infra* Section III.B. The district court rejected Abundiz's argument that the statements were involuntary because of his hospitalization, finding that Abundiz "provide[d] no documentation regarding the extent of his illness," nor "provide[d] an argument that, considering the totality of circumstances, his will was overborne" by the interviewers, and that Abundiz received his *Miranda* warnings. Abundiz does not advance his involuntariness argument on appeal.

[9] FED. R. EVID. 414(a).

[10] The final instruction read:

PREVIOUS ACTS OF SEXUAL ABUSE AND CHILD PORNOGRAPHY

You have heard evidence that the defendant may have committed other offenses of sexual abuse and downloading of child pornography and child sexual abuse material. The defendant was not convicted of any of these

No. 22-50697

On April 1, 2022, the jury found Abundiz guilty, and the district court sentenced him to life in prison, five years of supervised release if he were to be released, and a $100 special assessment.

Abundiz timely appealed. This Court has jurisdiction under 28 U.S.C. § 1291.

## II.

Abundiz contends the district court erred by allowing K.Z. to testify via CCTV. We find no error.

## A.

First, Abundiz argues that allowing K.Z. to testify via CCTV violated his Sixth Amendment right to confrontation as outlined in *Crawford v. Washington*. This issue is reviewed de novo and rejected by this Court.[11]

---

offenses. The defendant is not charged with any of these offenses. You may consider the evidence of any of these offenses only if you unanimously find that the offense or offenses you are considering is more likely true than not true of having occurred.

You decide that by considering all of the evidence of the given offense and deciding whether it is more likely than not to have occurred. This is a lower standard than beyond a reasonable doubt.

You must disregard the offense or offenses you find to have not been proved as stated in the previous paragraph. The offense or offenses that you find to have been proved as previously stated, can be considered by you in deciding any matter for which you find them relevant.

[11] *United States v. Cotto-Flores*, 970 F.3d 17, 39 (1st Cir. 2020) (citing *United States v. Turning Bear*, 357 F.3d 730, 735–36 (8th Cir. 2004)); *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006) (citing *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004) ("Alleged violations of the Confrontation Clause [of the Sixth Amendment] are reviewed *de novo*, but are subject to a harmless error analysis.") (alteration and emphasis in original).

No. 22-50697

The Sixth Amendment guarantees a criminal defendant the right to confront witnesses who testify against them.[12] However, the Supreme Court has recognized several exceptions to the right to physically confront witnesses.[13] Relevant here, the Supreme Court in *Maryland v. Craig* held:

> [I]f the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.[14]

Following *Craig*, Congress enacted 18 U.S.C. § 3509(b) to "specify[] the procedures to be used in federal courts to allow a child victim to testify via [CCTV]."[15] Of note, § 3509(b) permits 2-way CCTV under certain

---

[12] U.S. CONST. amend. VI.

[13] *See, e.g., Mattox v. United States*, 156 U.S. 237, 243 (1895) (former testimony of unavailable witness); *Ohio v. Roberts*, 448 U.S. 56, 63 (1980) (hearsay exceptions); *Bourjaily v. United States*, 483 U.S. 171, 183–84 (1987) (hearsay statements of nontestifying coconspirators*); Illinois v. Allen*, 397 U.S. 337, 345–46 (1970) (trial judge may remove defendant from courtroom for disruptive behavior). As the *Bourjaily* Court explained:

> While a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable, this Court has rejected that view as "unintended and too extreme." Rather, we have attempted to harmonize the goal of the Clause—placing limits on the kind of evidence that may be received against a defendant—with a societal interest in accurate factfinding, which may require consideration of out-of-court statements.

*Bourjaily*, 483 U.S. at 182 (citations omitted).

[14] *Maryland v. Craig*, 497 U.S. 836, 855 (1990).

[15] *United States v. Farley*, 992 F.2d 1122, 1124 (10th Cir. 1993).

No. 22-50697

circumstances, providing a greater ability for defendants to confront witnesses than the *Craig* Court, which upheld the use of 1-way CCTV.[16]

In 2004, the Supreme Court in *Crawford v. Washington* held that testimonial out-of-court statements by witnesses are barred by the Confrontation Clause unless the witness is otherwise unavailable and the defendant had a previous opportunity for cross-examination.[17] Abundiz argues that the Supreme Court's holding in *Crawford* "conflict[s]" with *Craig*—and presumably by extension, 18 U.S.C. § 3509(b)—and that "various courts and scholars have struggled to reconcile *Craig* with the Court's subsequent holding in *Crawford*." Abundiz's argument reduces to his contention that "given *Crawford*'s protections, it's just a matter of time before a clash between the two makes its way to the Supreme Court."

Abundiz provides no supporting citations for these assertions but properly concedes that "*Crawford* did not overturn *Craig*" and that "*Craig* governs this case."[18] He has also failed to elaborate on how having a child testify in real time, subject to cross-examination, via CCTV in response to expert findings that she is likely to be traumatized, conflicts with *Craig*. Nor has Abundiz explained how this situation differs from other exceptions to the

---

[16] *Compare Craig*, 497 U.S. at 860 ("So long as a trial court makes such a case-specific finding of necessity, the Confrontation Clause does not prohibit a State from using a one-way closed circuit television procedure for the receipt of testimony by a child witness in a child abuse case."), *with* 18 U.S.C. § 3509(b)(1)(A) ("In a proceeding involving an alleged offense against a child, the attorney for the Government . . . may apply for an order that the child's testimony . . . be televised by 2-way closed circuit television.").

[17] *Crawford v. Washington*, 541 U.S. 36, 54 (2004) ("[T]he common law in 1791 conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations.").

[18] *See United States v. Cox*, 871 F.3d 479, 492 (6th Cir. 2017) (Sutton, J., concurring) ("*Crawford* did not overturn *Craig*.").

No. 22-50697

Confrontation Clause that the Supreme Court and all Circuit Courts have repeatedly upheld.[19]

**B.**

Second, Abundiz argues that the district court failed to make the requisite factual findings under 18 U.S.C. § 3509(b). Section 3509(b) "sets forth the conditions under which a child may testify by closed-circuit television."[20] Specifically, it provides that "[i]n a proceeding involving an alleged offense against a child, the attorney for the Government . . . may apply for an order that the child's testimony be taken in a room outside the courtroom and be televised by 2-way closed circuit television."[21] If the court finds, *inter alia*, that "[t]he child is unable to testify because of fear" or "[t]here is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying" in open court, then "[t]he court may order that the testimony of the child be taken by closed-circuit television."[22] Accordingly, Abundiz argues the district court failed to find on the record that K.Z. would be unable to testify in open court because of either fear or a substantial likelihood, established by expert testimony, that she would suffer emotional trauma.[23]

Whether the district court's relevant factual findings under 18 U.S.C. § 3509 were supported by evidence in the record is reviewed for

---

[19] *See supra* note 13.

[20] *Cox*, 871 F.3d at 484 (citing *United States v. Moses*, 137 F.3d 894, 898 (6th Cir. 1998)).

[21] 18 U.S.C. § 3509(b)(1)(A).

[22] 18 U.S.C. § 3509(b)(1)(B)(i), (ii).

[23] At oral argument, Abundiz appeared to concede this issue; but to the extent he does not, this Court rejects the argument.

clear error, although whether such factual findings are "sufficient to permit the use of closed-circuit television testimony" is a legal question reviewed de novo.[24] Upon review, this Court finds no error.

As described *supra* Section I.A.1, the district court held a pre-trial hearing, heard expert testimony on this issue, and concluded K.Z. would be unable to testify in open court because there was a substantial likelihood she would suffer emotional trauma if forced to do so. Dr. Lubit testified that it was "too anxiety provoking" for K.Z. to discuss the assault one-on-one with him and that K.Z. repeatedly expressed she would be "quite afraid if she had to see [Abundiz]." Lubit testified that K.Z. was afraid to see Abundiz in the courtroom and that "if she had to talk about it, she would even be worse." Lubit opined that K.Z. would be "so flooded with anxiety, that she would not be able to" testify in court, and that her fear would, "to a reasonable degree of medical certainty . . . prevent her from being able to testify." Lubit further explained that in-court testimony would "re-traumatize her," "deepen the trauma she has," and cause "betrayal trauma"; moreover, Lubit said the risk of trauma was substantially more likely if K.Z. testified in front of Abundiz than apart from him. Finally, Lubit explained that courtroom accommodations would not reduce the risk of trauma and that K.Z. would still be "traumatized and very, very anxious."

After hearing from Lubit, the district permitted K.Z. to testify via CCTV given her "tender age," "[t]he combination of the time elapsed since the incident and the facts and circumstances leading to the incident," and

---

[24] *Cotto-Flores*, 970 F.3d at 39 (citing *Turning Bear*, 357 F.3d at 735–36); *Turning Bear*, 357 at 735–36 ("The district court was required to make certain findings in order to permit [the child victim] to testify by closed-circuit television. Whether the district court's relevant factual findings were supported by evidence in the record is reviewable under the 'clearly erroneous' standard . . . .").

No. 22-50697

"what has transpired since the incident." Then, the court confirmed on the record that these findings supported its ruling under 18 U.S.C. § 3509(1)(B)(ii). Finally, the judge limited his ruling so that K.Z. would be the only witness allowed to appear on camera to avoid any "misapprehensions, misperceptions, or any presumption of guilt."

The district court's findings are plausible, supported by Lubit's testimony, and stated on the record. Abundiz's argument fails.[25]

## III.

Abundiz contends the district court erroneously admitted evidence regarding prior sexual assaults and his possession of child pornography.[26] We find no error.

## A.

Abundiz argues the district court erred in admitting Maria and Rosalva's testimony pursuant to Federal Rule of Evidence 413 for two reasons. First, Abundiz contends the testimony was unfairly prejudicial under Federal Rule of Evidence 403. Second, Abundiz claims the district court improperly admitted the testimony as evidence of his character without

---

[25] There is little precedent in this Court addressing the requirements under 18 U.S.C. § 3509, but the district court's findings comport with those of other circuits. *See, e.g., United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019) (in dicta, describing that an expert witness with extensive experience in assessing trauma in sexually abused children forming an individualized opinion that a child victim would suffer trauma from testifying in front of the defendant would be a sufficient factual finding to support use of CCTV under §3509(b)(1)(B)(ii)).

[26] Although Abundiz's briefs refer to "two" prior sexual assaults—of both Maria and Rosalva—a review of the record shows that Rosalva and Maria testified about Abundiz's abuse of *Rosalva* during his youth. As a result, this Court will consider only allegations of Rosalva's sexual assault.

No. 22-50697

making on-the-record findings regarding the alleged assaults. We reject both arguments.

### 1. Relevancy and Prejudice

The district court admitted Maria and Rosalva's testimony pursuant to Federal Rule of Evidence 413. Abundiz argues that this testimony should not have been admitted because it lacked probative value and was unfairly prejudicial under Federal Rule of Evidence 403. As Abundiz preserved this argument, we review for an abuse of discretion subject to a harmless error analysis.[27] "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence."[28] However, an evidentiary error may "be excused if it was harmless, particularly if there is 'other overwhelming evidence of the defendant's guilt.'"[29]

Under Federal Rule of Evidence 402, relevant evidence is generally admissible unless otherwise provided by the federal Constitution, statute, or the Federal Rules of Evidence.[30] Although Rule 404(b) prohibits otherwise-

---

[27] *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008); *United States v. Escalante–Reyes*, 689 F.3d 415, 418 (5th Cir. 2012) (en banc); *United States v. Girod*, 646 F.3d 304, 318 (5th Cir. 2011); *United States v. Sanders*, 343 F.3d 511, 519 (5th Cir. 2003) ("[F]or any of the evidentiary rulings to be reversible error, the admission of the evidence in question must have substantially prejudiced Sanders's rights.").

[28] *United States v. Caillier*, 80 F.4th 564, 569 (5th Cir. 2023) (citing *United States v. Castillo*, 430 F.3d 230, 239–40 (5th Cir. 2005)).

[29] *United States v. Nguyen*, 504 F.3d 561, 571 (5th Cir. 2007) (citing *United States v. Williams*, 957 F.2d 1238, 1241 (5th Cir. 1992)) (cleaned up).

[30] Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

relevant "propensity" evidence,[31] FRE 413 provides a "broad exception" to FRE 404(b) and expressly allows the admission of character and propensity evidence in sexual assault cases to prove a defendant acted in conformity with that character.[32] Nevertheless, evidence admitted under FRE 413 remains subject to FRE 403's balancing test under which a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[33] Unfair prejudice may be "mitigated by the district court's careful instruction to the jury" that the defendant is on trial only for the charged crimes, not for the other conduct, act, or offense.[34] Ultimately, it is a "rare case" that would "warrant[] reversal of a district court's Rule 403 analysis."[35]

---

[31] "Propensity" evidence refers to "evidence of any other crime, wrong, or act [admitted] to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1).

[32] FED. R. EVID. 413(a) ("In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."); *United States v. Guidry*, 456 F.3d 493, 503 (5th Cir. 2006) ("Congress intended to *expand* the admissibility of character or propensity evidence relating to sexual assault by creating a broad exception to the prohibition in Rule 404(b).").

[33] FED. R. EVID. 413; FED. R. EVID. 403.

[34] *United States v. Lewis*, 796 F.3d 543, 548 (5th Cir. 2015).

[35] *Id.* (citing *Dillon*, 532 F.3d at 387). In *Dillon*, this Court stated:

A district court's determination under Rule 403 with respect to whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice is reviewed under an abuse of discretion standard but, at least generally, with "an especially high level of deference to" the district court, with reversal called for only "rarely and only when there has been a clear abuse of discretion."

*Dillon*, 532 F.3d at 387 (internal quotations and citations omitted).

After reviewing the record, we find that the district court did not abuse its discretion in admitting this testimony. First, Abundiz argues that Maria and Rosalva's testimony lacked probative value and was not relevant to the case at hand because Rosalva's alleged assaults were remote in time and "unadjudicated."[36] The district court disagreed and in doing so, explained its application of the Rules of Evidence to the facts. The court began this analysis by noting that FRE 413 is a rule "of inclusion and presumes the admissibility of evidence that falls under the rule." The district court appropriately found that Rosalva's alleged assaults need only be relevant to be admissible under FRE 413; Abundiz did not need to be formally charged or convicted for the conduct to be admissible. The court found the evidence regarding a defendant's "history of allegations of sexual assault" probative "in a trial for aggravated sexual abuse" and not "substantially outweighed by the concerns in Rule 403."

We agree and find that the district court did not abuse its discretion in finding the testimony probative and relevant. An "alleged sexual assault does not need to have been identical" to the charged sexual assault for it "to be admissible, but aspects of the assault must have sufficient probative value as to some element of the charged offense to not be substantially outweighed by its danger of unfair prejudice."[37] Rosalva's testimony that Abundiz raped her as a child speaks to Abundiz's tendency to commit sexual assault generally, and with children and family members specifically. Maria's testimony corroborates Rosalva's account. And statements by Abundiz's counsel at trial—notably, that "there is great similarity" between the "prior acts" and "the act charged"—refute Abundiz's current argument that the assaults are

---

[36] Abundiz also objects on the grounds that the assault occurred within the context of "child abuse and unlawful status." However, he failed to elaborate on this argument.

[37] *Dillon*, 532 F.3d at 389.

No. 22-50697

too dissimilar to offer value. Finally, because part of Abundiz's defense was that K.Z. misidentified the perpetrator, this evidence that he committed previous sexual assaults is particularly probative.[38]

Abundiz's second argument—that the testimony was unfairly prejudicial—fares no better. While Maria and Rosalva's testimony may be prejudicial, "prejudice" is not enough: Rule 403 only prohibits evidence when its probative value is *substantially* outweighed by the danger of *unfair* prejudice.[39] Abundiz's only contention regarding unfair prejudice is that "the admission of this kind of evidence caused undue prejudice with the jury who was likely moved with undue passion and emotion to punish the appellant."

That the district court "took great care in weighing the evidence of" additional alleged assaults and "admitted [only] those that it determined to be relevant" supports the conclusion that it appropriately exercised its discretion.[40] Specifically, the district court declined to admit "additional evidence relating to Abundiz['s] abuse of [Maria]" in part because it did not

---

[38] Although the district court did not expressly address Abundiz's arguments that the assaults were "unadjudicated" or "undermined by the underlying parental child abuse," the court sufficiently justified its ultimate ruling and implicitly addressed Abundiz's objections.

[39] Fed. R. Evid. 403.

[40] *Dillon*, 532 F.3d at 391 ("[The district court] held that their testimony would have been unfairly prejudicial because those two alleged sexual assaults were remote in time and dissimilar in their commission to the charged offenses. The district court took great care in weighing the evidence of all these prior sexual assaults. It admitted those that it determined to be relevant, and it excluded those that it determined to be unfairly prejudicial. In making these decisions, we are unable to conclude, under the applicable standard of review, that the district court abused its discretion.").

comply with Rule 403.[41] In short, the district court did not blindly admit all evidence of prior sexual incidents but carefully considered the admissibility of each instance under the appropriate legal standards. We conclude that the district court did not abuse its discretion in admitting Maria and Rosalva's testimony.[42]

### 2. FRE 104(b)

Second, Abundiz argues that the district court erred in admitting Maria and Rosalva's testimony because it did not "make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the defendant committed the other act and that it constituted an 'offense of sexual assault' for purposes of Fed. R. Evid. 413."[43] He also appears to suggest that the district court was required to make this finding on the record.

While Abundiz objected to the want of a "probable cause finding" before the district court, he did not reference Federal Rule of Evidence 104 or the correct "preponderance of the evidence" standard applicable to whether uncharged acts under FRE 413 may be submitted to the jury.[44]

---

[41] The district court found the evidence inadmissible in part because it was "needlessly cumulative" under FRE 403.

[42] Further, without the evidence relating to Maria and Rosalva, the trial would have been little more than "a swearing match between K.Z. and Abundiz, which is a primary reason Rules 413 and 414 were enacted." *See Guidry*, 456 F.3d at 502–03 ("Because sexual assault allegations are often reduced to a swearing match, Congress aimed to assist the fact finder's assessment of credibility through allowing evidence of the defendant's extrinsic sexual misconduct as character or propensity evidence.").

[43] On appeal, Abundiz uses both "probable cause" and "preponderance of the evidence" language to describe his objections.

[44] Fed. R. Evid. 104; *Dillon*, 532 F.3d at 387 (describing that the preponderance of the evidence standard applies to evidence proffered under Rule 413).

Because Abundiz's objections below did not put the district court on sufficient notice of his claim, we review for plain error.[45]

Federal Rule of Evidence 104 requires courts to decide preliminary questions about whether evidence is relevant and admissible.[46] Under Rule 104(b), "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist," but courts are permitted to preliminarily admit the evidence, so long as the required proof is introduced later.[47] In certain instances, courts are required to conduct a hearing on a preliminary question, but there is otherwise no requirement that a district court make "on the record" findings regarding preliminary issues.[48] Moreover, this Court has held:

> To be admissible under Rule 413, the uncharged "offense of sexual assault" need not be established by a conviction . . . but the district court must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the defendant committed the other act and that it constituted an "offense of sexual assault" for purposes of Rule 413.[49]

---

[45] Because Abundiz cited the wrong standard in his objection below, he likely did not provide the district court with sufficient notice of his claim and, as such, did not preserve the error. *See Lewis*, 796 F.3d at 545 ("To preserve error, an evidentiary objection must 'state[ ] the specific ground, unless it was apparent from the context.'") (citation omitted) (alteration in original). Furthermore, the record indicates that the district court did not address his concern, increasing the likelihood that Abundiz failed to sufficiently apprise the court of his objection. *See id.* at 546 (ruling that plain error review applied when defendant argued before the district court that FRE 413 evidence should not be admitted because it was intrastate and not interstate but on appeal, defendant argued the same evidence should not have been admitted for a different reason).

[46] Fed. R. Evid. 104(a).

[47] Fed. R. Evid. 104(b).

[48] Fed. R. Evid. 104(c).

[49] *Dillon*, 532 F.3d at 387 (internal citations omitted).

Thus, although the district court made no on-the-record findings pursuant to Federal Rule of Evidence 104(b) that the alleged assaults occurred, the failure was not plain error. To start, Rule 104(b) does not on its face require an explicit finding, nor does Abundiz offer case law suggesting otherwise. Instead, the text of Rule 104(b) merely requires the existence of "proof" that is "sufficient to support a finding" that the incident occurred. Here, the district court made implicit findings that the assaults took place when it found the allegations probative.

More telling is the district court's instruction to the jury that it "may consider the evidence of any of these offenses [FRE 413 and FRE 414 evidence] only if you unanimously find that the [prior] offense or offenses you are considering is [sic] more likely true than not true of having occurred." As a result, the absence of an express finding under FRE 104(b) by the district court was not plain error: the court implicitly made the Rule 104(b) finding and cured any potential error by jury instruction.[50]

## B.

We turn next to Abundiz's argument that it was unfairly prejudicial for the district court to admit evidence that Abundiz possessed child pornography under FRE 414, which "in a criminal case in which a defendant is accused of child molestation, [allows] the court [to] admit evidence that the defendant committed any other child molestation."[51] In particular, the district court admitted Abundiz's statements to FBI Agent Fronczak as well as the results of an independent FBI investigation showing that a device with

---

[50] Moreover, Abundiz does not claim the Court should exercise its discretion due to a serious effect on "the fairness, integrity or public reputation of judicial proceedings." *See Escalante–Reyes*, 689 F.3d at 419 (internal quotation marks and alteration omitted).

[51] FED. R. EVID. 414(a).

an IP address linked to his mailing address shared such materials. Before the district court, Abundiz objected to this evidence on the basis that his statements to Fronczak were involuntary. He has abandoned this argument on appeal and instead argues that the evidence was unfairly prejudicial. Because his prejudice argument was not made below, this Court reviews the objection for plain error and finds none.

As a threshold matter, Abundiz gives this issue little attention, devoting only two lines of his brief to arguing the evidence was prejudicial because "he was convicted and received a life sentence."[52] He does not explain how this evidence was *unfairly* prejudicial as required under FRE 403. Finally, even assuming some error, Abundiz presents no argument that the error was clear or that it affected his substantial rights. We find no plain error.

## IV.

Finally, Abundiz contends the jury instructions regarding evidence admitted under FRE 413 and 414 were erroneous because they "did not clearly state how the jury would use all of the 413/414 evidence," "confuse[d] the standard of proof required to convict," and "g[a]ve the jury the ability to convict using a 'lower standard' of proof."[53]

---

[52] Abundiz argues:

Even if Fed. R. Evid. 414(a) allows [the evidence] in as a similar act of child molestation, the prejudicial effect when combined with the R.H. and M.R. testimony cannot be overstated. In fact, there is no way to quantify the prejudice this admission caused the appellant's right to a fair trial other than he was convicted and received a life sentence.

[53] Abundiz sufficiently preserved this objection.

No. 22-50697

We review this challenge for an abuse of discretion.[54] When considering whether a jury instruction was supported by the evidence, this Court "view[s] the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Government."[55] Erroneous jury instructions are considered harmless if a court, "after a 'thorough examination of the record,' is able to 'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'"[56]

Upon review, Abundiz's arguments are unpersuasive. The district court appropriately exercised its discretion to draft jury instructions[57] as this Circuit does not have pattern jury instructions for FRE 413 and FRE 414 evidence. And more to the point, the district court's instructions were

---

[54] *United States v. Elashyi*, 554 F.3d 480, 504 (5th Cir. 2008).

[55] *United States v. Nguyen*, 493 F.3d 613, 619 (5th Cir. 2007) (citations omitted).

[56] *United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011) (quoting *Neder v. United States*, 527 U.S. 1, 19 (1999)).

[57] PREVIOUS ACTS OF SEXUAL ABUSE AND CHILD PORNOGRAPHY

You have heard evidence that the defendant may have committed other offenses of sexual abuse and downloading of child pornography and child sexual abuse material. The defendant was not convicted of any of these offenses. The defendant is not charged with any of these offenses. You may consider the evidence of any of these offenses only if you unanimously find that the offense or offenses you are considering is more likely true than not true of having occurred.

You decide that by considering all of the evidence of the given offense and deciding whether it is more likely than not to have occurred. This is a lower standard than beyond a reasonable doubt.

You must disregard the offense or offenses you find to have not been proved as stated in the previous paragraph. The offense or offenses that you find to have been proved as previously stated, can be considered by you in deciding any matter for which you find them relevant.

No. 22-50697

sufficient and do not indicate clear, reversible error. The court modeled the language from the Eighth Circuit's pattern instructions but modified them in three major ways: (1) removing the word "believable" from the fourth line; (2) repeating the preponderance standard to avoid reducing the standard of proof for prior act evidence; and (3) removing language suggesting specific ways that the jury could use the evidence to avoid "nudg[ing]" the jury.[58] As

---

[58] The Eighth Circuit's pattern instructions stated:

2.08A DEFENDANT'S PRIOR SIMILAR ACTS IN SEXUAL ASSAULT AND CHILD MOLESTATION CASES (FED. R. EVID. 413 AND 414)

You [are about to hear] [have heard] evidence that the defendant may have previously committed [another] [other] offense[s] of [sexual assault] [child molestation]. The defendant is not charged with [this] [these] other offense[s]. You may consider this evidence only if you unanimously find it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more *believable*. This is a lower standard than proof beyond a reasonable doubt. If you find that [this offense has] [these offenses have] not been proved, you must disregard [it] [them]. If you find that [this offense has] [these offenses have] been proved, you may consider [it] [them] to help you decide any matter to which [it is] [they are] relevant. *You should give [it] [them] the weight and value you believe [it is] [they are] entitled to receive. You may consider the evidence of such other act[s] of [sexual assault] [child molestation] for its tendency, if any, to show the defendant's propensity to engage in [sexual assault] [child molestation] [.] [, as well as its tendency, if any, to [determine whether the defendant committed the acts charged in the Indictment] [determine the defendant's intent] [determine the identity of the person who committed the act[s] charged in the Indictment] [determine the defendant's (motive) (plan) (design) (opportunity) to commit the act[s] charged in the Indictment] [determine the defendant's knowledge] [rebut the contention of the defendant that [his] [her] participation in the offense[s] charged in the Indictment was the result of (accident) (mistake) (entrapment)] [rebut the issue of_____ raised by the defense].] Remember, the defendant is on trial only for the crime[s] charged. You may not convict a person simply because you believe [he] [she] may have committed similar acts in the past.*

No. 22-50697

modified, the district court appropriately informed the jury that evidence admitted under FRE 413 and 414 may be used for any relevant purpose only if it was proven by a preponderance of the evidence. As drafted, the instructions track the language of the Rules of Evidence and do not improperly suggest how the jury should use the evidence.[59]

Contrary to Abundiz's assertions, the instructions do not allow the jury to convict using a lower standard of proof, nor do they confuse the preponderance and beyond a reasonable doubt standards. And although the instructions do not specifically instruct the jury on how to use the evidence, they need not do so because the Federal Rules of Evidence permit juries to use the evidence for *any* relevant purpose. In short, as the Government argues, "[t]he district court's thoughtful consideration of how to craft this jury instruction in the absence of a pattern instruction was well-balanced and aimed to ensure that the jury followed the law regarding consideration of the Rule 413 and 414 evidence;" there was no abuse of discretion.

## V.

The district court properly allowed K.Z. to testify via CCTV and did not err in admitting testimony of Abundiz's previous sexual assault or in crafting jury instructions about using evidence admitted under FRE 413 and 414. We AFFIRM.

---

Manuel of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit §2.08A (2021) (emphasis added only on parts removed or changed when comparing this instruction to the district court's instruction in this case.)

[59] Fed. R. Evid. 413; Fed. R. Evid. 414.